UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:15-CR-94-JRG-MCLC-2 |
| | ) | |
| FERNANDO SIMON EUDAVE-CASTANEDA | ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Fernando Simon Eudave Castaneda's Motion to Reduce Sentence under Amendment 821 [Doc. 96]. The Federal Defender Services of Eastern Tennessee filed a supplemental motion on Mr. Eudave Castaneda's behalf [Doc. 100], and the United States filed a Response in Opposition [Doc. 101]. For the reasons herein, the Court will deny Mr. Eudave Castaneda's motion.

I. BACKGROUND

In 2015, law-enforcement officers located Mr. Eudave Castaneda and his vehicle at a motel in Roane County, Tennessee after an investigation into his co-defendant lead them there. Mr. Eudave Castaneda gave officers permission to search his car, and eventually admitted that there was a significant quantity of drugs in the vehicle and pointed them in the right direction. Officers located approximately seven pounds of methamphetamine hidden in his vehicle and arrested Mr. Eudave Castaneda. Further investigation of his cell phone uncovered photos of the defendant holding large quantities of methamphetamine, as well as photos of the defendant with various weapons and firearms and large quantities of cash.

A Federal Grand Jury then indicted Mr. Eudave Castaneda on one count of conspiracy to distribute and to possess with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and one count of possession with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. 841(a)(1). He later pled guilty to Count Two of the indictment. At sentencing, Mr. Eudave Castaneda had a total offense level of 33, three criminal history points, and a criminal history category of II, resulting in a guidelines range of 151-188 months. He was later sentenced to a total of 155 months' imprisonment, and a term of 5 years supervised release.

Mr. Eudave Castaneda now moves the Court to reduce his sentence under 18 U.S.C. § 3582(c)(2) and Amendment 821 to Appendix C of the *United States Sentencing Commission Guidelines Manual*. The United States opposes his motion. Having carefully reviewed the parties' arguments, the Court is now prepared to rule on Mr. Eudave Castaneda's motion.

## II.  LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (internal quotation omitted). Congress enacted one of those exceptions in 18 U.S.C. § 3582(c)(2), which states:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In short, a prisoner will be eligible for a reduction under § 3582(c)(2) if he satisfies two requirements. *See United States v. McClain*, 691 F.3d 774, 777 (6th Cir. 2012) (stating that the defendant "must show" that he is entitled to a sentence reduction under § 3582(c)(2)).

First, the prisoner must have "been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *United States v. Taylor*, 815 F.3d 248, 250 (6th Cir. 2016) (quoting *id.*); *see* U.S. Sent'g Guidelines Manual § 1B1.10(a)(1) cmt. n.1(A) ("Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment . . . that lowers the applicable guideline range[.]").[1] This is so because Congress has "charge[d] the Commission both with deciding whether to amend the Guidelines and with determining whether and to what extent an amendment will be retroactive." *Dillon v. United States*, 560 U.S. 817, 826–27 (2010) (footnote committed) (citing 28 U.S.C. § 994(o), (u))).

Second, a reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Taylor*, 815 F.3d at 250 (quoting § 3582(c)(2)). USSG § 1B1.10 contains the Sentencing Commission's policy statements. *See* U.S. Sent'g Guidelines Manual § 1B1.10(a)(1) (providing that a reduction "shall be consistent with this policy statement"). A reduction is inconsistent with USSG § 1B1.10 when the amendment at issue (1) does not apply to the defendant or (2) does not lower the defendant's guidelines range. *Id.* § 1B1.10(a)(2)(A)–(B). In determining whether a reduction is consistent with USSG § 1B1.10, the Court first calculates "by what amount" a prisoner's sentence "may be reduced." 28 U.S.C. § 994(u); *see Dillon*, 560 U.S. at 826–27. In doing so, the Court identifies the amended guidelines range—that is, the

---

[1] "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Douglas*, 634 F.3d 852, 862 (6th Cir. 2011) (alteration in original) (footnote omitted) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993))).

guidelines range that would have applied to the prisoner if the applicable amendment had been in effect during sentencing—and it substitutes this guidelines range for the original guidelines range. *Dillon*, 560 U.S. at 827; U.S. Sent'g Guidelines Manual § 1B1.10(b)(1). A prisoner generally is not entitled to receive a reduction below the minimum of the amended guidelines range. U.S. Sent'g Guidelines Manual § 1B1.10(b)(2)(A).

If a reduction is consistent with § 1B1.10, the Court must then shift its attention to any applicable factors under 18 U.S.C. § 3553(a), as well as to public-safety factors, to determine— in its discretion—whether a reduction "is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827; *see United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010) ("[T]he district court *may* reduce a previously imposed sentence if [the] statutory requirements . . . are met. Section 3582 does not create a *right* to a reduced sentence, however." (citing U.S. Sent'g Guidelines Manual § 1B1.10 cmt. background)); U.S. Sent'g Guidelines Manual § 1B1.10 cmt. n.1(B)(i) (stating that courts "shall consider the factors set forth in 18 U.S.C. § 3553(a)"); U.S. Sent'g Guidelines Manual § 1B1.10 cmt. n.1(B)(ii)–(iii) (stating that courts "shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment" and "may consider post-sentencing conduct of the defendant").

### III.    ANALYSIS

In 2023, the Sentencing Commission submitted to Congress a multi-part amendment to the guidelines' criminal history rules: Amendment 821 in Appendix C to the *Guidelines Manual*. The Sentencing Commission gave retroactive effect to two parts of that amendment: Part A and Part B, Subpart 1. *See* U.S. Sent'g Guidelines Manual § 1B1.10(d); U.S. Sent'g Guidelines Suppl. to app. C, amend. 825. Part A of Amendment 821 addresses "status points" under USSG § 4A1.1.

Status points are the criminal history points that apply to defendants who have committed their underlying federal offense while serving a prior criminal sentence—most often probation, parole, or supervised release. Specifically, Part A decreases status points from two points to one point for defendants with seven or more criminal history points and eliminates status points for defendants with six or fewer criminal history points. As amended by Amendment 821, § 4A1.1 in Chapter Four of the *Guidelines Manual* now reads:

> The total points from subsections (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.
>
> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
>
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
>
> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.
>
> (d) Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was treated as a single sentence, up to a total of 3 points for this subsection.
>
> (e) Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

U.S. Sent'g Guidelines Manual § 4A1.1.

In moving for a sentence reduction, Mr. Eudave Castaneda seeks relief under Part A of Amendment 821 only [Def. Mot. at 2]. He correctly argues that the deduction of one status point would place him in a lower criminal history category to I and reduce his guidelines range to 135-168 months [*Id.*]. The United States argues that while the Court has discretion to reduce Mr. Eudave Castaneda's sentence pursuant to Amendment 821, he is not entitled to such a reduction due to the seriousness of the offense and his post-sentencing conduct [United States Resp. at 3].

After determining that Mr. Eudave Castaneda is eligible for a sentence reduction under Amendment 821, the Court now shifts to the factors it must consider under §3553(a). The Court considered § 3553(a)'s factors "in some depth at the original sentencing," *Curry*, 606 F.3d at 331, so it has no obligation to readdress each of those factors now, *see* 18 U.S.C. § 3582(c)(1)(A) (requiring district courts to consider § 3553(a)'s factors "to the extent that they are applicable"); *see also United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (stating that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *Curry*, 606 F.3d at 330–31)). "[A]s long as the record *as a whole* demonstrates that the pertinent factors were taken into account," the Court's analysis will be complete and adequate. *Curry*, 606 F.3d at 330–31 (emphasis added) (internal quotation marks and quotation omitted)).

In Mr. Eudave Castaneda's case, the factors that the Court will address include § 3553(a)(1), (2), and (4):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

. . . .

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

18 U.S.C. § 3553(a)(1)– (2), (4).

Mr. Eudave Castaneda's offense - possession with the intent to distribute 50 grams or more of methamphetamine – is serious in nature, and so are the circumstances of his offense. *See United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018) ("We have categorically labeled drug offenses as serious." (citing *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000))); *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense[.]" (citations omitted)); *cf. United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003) (describing a conspiracy to distribute heroin as "grave"). In his plea agreement, Mr. Eudave Castaneda admitted to possessing and transporting a copious amount, approximately 7 pounds, of methamphetamine to the Eastern District of Tennessee [Plea Agreement at 3]. Additionally, according to the factual basis that he stipulated to in his plea agreement, Mr. Eudave Castaneda had transported methamphetamine to the Eastern District of Tennessee in a similar manner once before, demonstrating a pattern of drug trafficking and a lack of respect for the law or the serious nature of such offenses [*Id.*].

Further, Mr. Eudave Castaneda received a favorable outcome at sentencing. The Court had discretion to sentence him to up to 188 months' imprisonment, and he received 151 months' imprisonment [Judgment at 2]. Receiving the bottom of the sentencing guidelines range for such a serious offense is surely favorable, and granting Mr. Eudave Castaneda's motion to reduce his sentence further would simply not reflect the seriousness of the offense, nor provide adequate deterrence or protect the public from future crimes. *See United States v. Garfias*, No. 5:19-080-DCR, 2024 WL 457763, at *2 (E.D. Ky. Feb. 6, 2024) (recognizing that the defendant received a favorable outcome at sentencing and declining to grant him a reduction under Amendment 821 because "any further reduction of [his] sentence would unduly diminish the seriousness of his offenses").

Moreover, Mr. Eudave Castaneda's post-sentencing conduct concerns the Court and weighs against a reduction in his sentence. §1B1.10 of the United States Sentencing Guidelines serves as the policy statement regarding reductions in terms of imprisonment as a result of an amended guidelines range. Comment 1(B)(iii) provides that "The Court may consider post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment in determining (I) whether a reduction in the defendant's term of imprisonment is warranted, and (II) the extent of such reduction, but only within the limits described in subsection (b)."

A review of Mr. Eudave Castaneda's Bureau of Prisons record shows four disciplinary infractions from 2018-2021. These infractions include assault of another inmate, mail abuse, disruptive conduct, and most recently, use of email to introduce narcotics into the facility [United States Resp., Exhibit 1, at 1-2]. Mr. Eudave Castaneda argues that his latest infraction occurred in 2021 and that since then, he has committed to improvement through work assignments and programming [Def. Mot. at 5-6]. His Bureau of Prisons records evidence his participation in

several educational and wellness programs, however, it also shows unsatisfactory progress toward his GED [Def. Mot., Exhibit 1, at 1]. While the Court commends him for his efforts toward improvement, it cannot overlook such serious disciplinary incidents in its evaluation of his motion.

Due to the serious nature of Mr. Eudave-Castaneda's offense and the circumstances surrounding it, the favorable outcome he received at sentencing, and his concerning post-sentencing conduct, the Court has determined that the § 3553(a) factors, as well as the Sentencing Commission's policy statement in §1B1.10 of the United States Sentencing Guidelines, weigh against a sentence reduction under § 3582(c)(2). As a result, he is not eligible for a sentence reduction under Amendment 821.

### IV.    CONCLUSION

Mr. Eudave Castaneda fails to show that he is entitled to a sentence reduction under § 3582(c)(2) and Amendment 821, and his Motion for Sentence Reduction under Amendment 821 [Doc.100] is therefore **DENIED**.

So ordered.

ENTER:

s/ J. RONNIE GREER
_____
UNITED STATES DISTRICT JUDGE
